UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| In re: ) | |
| ) | |
|    EDWARD TRAE GREEN, III ) | Case No. 09-17646-SSM |
|    d/b/a Affinity Painting ) | Chapter 13 |
| ) | |
|               Debtor ) | |

**MEMORANDUM OPINION**

Before the court is the objection of the debtor's former spouse, Sonia N. Green, to confirmation of a plan that provides no more than a 21% payment of the equitable distribution award made to her in the parties' divorce case. A hearing was held on December 9, 2009, at which the debtor and the creditor were each present in person and were represented by counsel. The chapter 13 trustee was also present but took no position. For the reasons stated, confirmation will be denied.

Background

Edward Trae Green, III ("the debtor") is a self-employed painter who was divorced from Sonia N. Green by a decree of the Circuit Court of Fairfax County, Virginia, entered on February 11, 2008. Relevant to the present controversy, the divorce court determined that marital property should be divided 60% to the debtor and 40% to Ms. Green. Because the value of the property retained by the debtor exceeded his 60% interest, the decree awarded Ms. Green an equalizing judgment in the amount of $45,737, to be paid, with interest at the judgment rate, on or before 365 days from the entry of the decree. In making the calculation, the court valued the marital

1

residence (titled in the debtor's name) at $370,000, subject to a purchase-money deed of trust with a balance of $178,851 and a home equity line of credit with a balance of $75,041.

    The debtor did not pay the judgment by the date specified in the decree, although in response to enforcement efforts by Ms. Green he made five modest payments totaling $2,100. On May 8, 2009, the Circuit Court, at Ms. Green's request, issued a rule for the debtor to show cause why he should not be held in contempt for failure to pay child support and the equitable distribution award.[1] On September 18, 2009—three days before the scheduled trial of the rule to show cause—the debtor filed a petition in this court for adjustment of his debts under chapter 13 of the Bankruptcy Code. On his schedules, he listed the real property as having a value of $335,000, subject to two deeds of trust, one in the amount of $170,000 and the other in the amount of $139,000. The debtor claimed $5,000 of the equity in the property as exempt under the Virginia homestead exemption. The only unsecured debts listed on his schedules were a credit card with a balance of $11,080, and the equitable distribution award to Ms. Green in the amount of $45,737.[2] His schedules reported income from his painting business of $4,500 per month and living expenses (including $555 a month for child support)[3] of $4,250 per month.

    The plan before the court requires the debtor to pay the chapter 13 trustee $250 a month for 60 months. From the funds received, the trustee would pay his own statutory commission of

---

[1] Although the record is not well developed, the child support had apparently been brought current by the confirmation hearing and is not an issue in this case.

[2] The credit card issuer filed a proof of claim in the amount of $10,374; Ms. Green has not yet filed a proof of claim.

[3] The divorce decree set the child support obligation payable to Ms. Green at $455 per month; the court is not advised whether this amount was subsequently increased or whether the debtor is also paying support with respect to another child. His schedule of monthly expenses lists <u>two</u> children, and in his testimony he briefly referred to custody litigation he intended to bring against a Denise Bryant.

10% and fees to debtor's counsel of $1,500. The balance of the funds would be paid pro rata to creditors with allowed unsecured claims, with the estimated distribution being 21 cents on the dollar.[4] Monthly payments totaling $1,703 on two mortgages against the debtor's real estate would be paid directly by the debtor outside the plan.

At the confirmation hearing, the debtor testified that although he was able to pay his household bills, he had always been late, and that the reason he filed for chapter 13 protection was because he did not have the lump sum to pay the equitable distribution judgment. He professed not to have understood at the time of the divorce that the equitable distribution award had to be paid within a year. He further testified that he was current on his mortgage payments. Although he acknowledged that the amount owed on the home equity line of credit had increased by approximately $65,000 since the divorce decree, he could not explain what the money had been used for.

Discussion

A.

Chapter 13 allows a financially-distressed debtor to restructure debts and to repay creditors out of future income under court protection and court supervision. Although priority claims must be paid in full, as must secured claims if the debtor proposes to keep the collateral,[5] unsecured claims may be compromised provided (1) the case was filed in good faith, (2) the plan is proposed in good faith, (3) creditors receive at least as much as they would in a chapter 7

---

[4] This estimate appears to be accurate. A total of $15,000 would be paid into the plan. After deduction of $1,500 as the trustee's commission and $1,500 in attorney's fees, $12,000 would remain for payment of unsecured claims. The filed proof of claim by the credit card issuer and the scheduled claim of Ms. Green total $51,111, resulting in a dividend of 21%.

[5] Ms. Green does not contend that the divorce decree gave rise to a judgment lien securing the equitable distribution award. Had it done so, very different issues would be presented.

3

liquidation, and (4) the debtor pays his or her projected disposable income into the plan for the applicable commitment period, which is 36 months if the debtor's current monthly income is below the state-wide median for a household of the same size, or 60 months if it equals or exceeds the state-wide median. § 1325(a)(3), (4), (7), (b)(1), (4), Bankruptcy Code.

In her objection, Ms. Green asserts that neither the debtor's case nor his plan was filed in good faith.[6] The Fourth Circuit has held that the test for evaluating the good faith of a plan that provides no or only minimal payment of unsecured claims is totality of the circumstances. *Deans v. O'Donnell*, 692 F.2d 968 (4th Cir. 1982). A non-exclusive list of relevant factors includes "the percentage of proposed repayment, . . . the debtor's financial situation, the period of time payment will be made, the debtor's employment history and prospects, the nature and amount of unsecured claims, the debtor's past bankruptcy filings, the debtor's honesty in representing facts, and any unusual or exceptional problems facing the particular debtor." *Id.* at 972. Additionally, the use of chapter 13 to compromise a claim that would not be dischargeable in chapter 7, while not by itself a sufficient basis for finding bad fath, is nevertheless a relevant factor to be considered. *Neufeld v. Freeman*, 794 F.2d 149 (4th Cir. 1986). The last factor is particularly relevant to the present case, because an equitable distribution award is non-dischargeable in a

---

[6] At oral argument, Ms. Green's attorney expanded on his filed grounds of objection and suggested that the equitable distribution award should be viewed as a "domestic support obligation," which, as a priority claim, is required to be paid in full. §§ 101(14A), 507(a)(1), and 1322(a)(2), Bankruptcy Code. The court does not concur. A domestic support obligation "means a debt owed to a former spouse that is 'in the nature of alimony, maintenance or support.' This does not include a debt arising from a property settlement or equitable distribution award." *In re Uzaldin*, 418 B.R. 166, 171 (Bankr. E.D. Va. 2009) (internal citation omitted). The state court ruling in the divorce case distinguishes quite carefully between support and equitable distribution and makes it plain that the purpose of the equitable distribution award was not to provide for Ms. Green's support but to compensate her for the difference between her marital interest in the property dealt with by the decree and the property she received or retained.

chapter 7 but is dischargeable in chapter 13. §§ 523(a)(15) and 1328(a)(2), Bankruptcy Code; *In re Uzaldin*, 418 B.R. 166, 171-72 (Bankr. E.D. Va. 2009).

B.

In the present case, the debtor's financial situation would support a need for chapter 13 relief. Although his mortgage payments were current and he was able to pay his household expenses, he testified that he had fallen behind on his credit card payments and did not have the ability to pay the equitable distribution award. He is paying into the plan his entire disposable income for the maximum five-year period that chapter 13 permits. The percentage payment, although relatively low at 21%, is nevertheless not insignificant. Although the equitable distribution claim—which represents slightly over 80% of the unsecured debt dealt with by the plan—would be non-dischargeable in a chapter 7 case, that fact alone does not compel a finding of bad faith. Put another way, a debtor in financial distress does not act in bad faith in simply taking advantage of a benefit Congress has chosen to provide.

There is, however, an additional factor, which is the unexplained increase in the balance on the home equity line of credit from $75,041 to $139,000 in the 19 months from entry of the divorce decree to the filing of the bankruptcy case. Coupled with a modest decline in the value of the property, the effect was to reduce the debtor's equity in the property from $116,108 to $26,000.[7] Of course, the debtor can hardly be faulted for the decrease in the value of the property—the dramatic decline in property values in Northern Virginia in recent years as a result

---

[7] The pertinent figures are as follows:

|  | 2/11/2008 | 9/18/2009 | Difference | % |
|---|---|---|---|---|
| Fair Market Value | $370,000.00 | $335,000.00 | ($35,000.00) | -9% |
| 1st Deed of Trust | ($178,851.00) | ($170,000.00) | ($8,851.00) | -5% |
| 2nd Deed of Trust (HELOC) | ($75,041.00) | ($139,000.00) | $63,959.00 | 85% |
| Equity | $116,108.00 | $26,000.00 | ($90,108.00) | -78% |

5

of the sub-prime mortgage meltdown is too well known to require citation. What is disturbing, however, is that the nearly $64,000 increase in the amount taken out on the home equity line of credit is $20,000 more than the amount the debtor was required to pay Ms. Green. Since the debtor testified that he was current on the mortgages against the property, there is no apparent reason why he could not have paid the equitable distribution award from the advances taken on the line of credit. Had the advances resulted from some financial emergency or had they been used for some purpose that appeared productive at the time, a different issue might be presented. Here, however, the debtor has provided no explanation whatsoever to account for the advances taken against the line of credit. Unwise financial decisions, standing alone, will not necessarily equate to bad faith. A great many debtors, after all, find themselves in bankruptcy as a result of bad financial decisions. But a complete failure to provide any accounting, when coupled with the relatively low dividend being paid and the fact that the largest debt would be non-dischargeable in chapter 7, tips the balance in this case against a finding of good faith.[8]

---

[8] Many of the same factors that are relevant to whether the plan was filed in good faith would also apply to a determination of whether the case itself was filed in good faith. *See, Uzaldine*, 418 B.R. at 173-74 (stating that Fourth Circuit follows totality of circumstances test as articulated by *In re Love,* 957 F.2d 1350, 1355 (7th Cir. 1992)). Even so, the court does not find, as Ms. Green asserts, that the debtor's case was filed in bad faith. In particular, the court does not find that the filing of the bankruptcy petition shortly prior to the scheduled trial on the rule to show cause reflects an improper motive for seeking bankruptcy relief. Many, if not most, bankruptcy petitions are filed in response to creditor enforcement efforts. By its very nature, a show cause hearing in a domestic relations case raises the very real threat of incarceration, which would effectively prevent the debtor, because he is self-employed, from paying any of his debts, including his child support and his mortgage. Thus, the debtor will be given the opportunity, if he is able, to file a modified plan.

A separate order will be entered denying confirmation of the plan.

Date: _____    _____
                                              Stephen S. Mitchell
Alexandria, Virginia                          United States Bankruptcy Judge

Copies to:

Kenneth L. Crosson, Esquire
11350 Random Hills Road, Suite 700
Fairfax, VA 22030
Counsel for Sonia N. Green

Scott H. Donovan, Esquire
9402 Grant Avenue
Manassas, VA 20110
Counsel for the debtor

Edward Trae Green, III
10241 Roberts Common Ln.
Burke, VA 22015
Debtor

Thomas P. Gorman, Esquire
300 N. Washington St. Ste. 400
Alexandria, VA 22314
Chapter 13 trustee