UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

In re:                                    )
                                          )
    EDWARD TRAE GREEN, III                )    Case No. 09-17646-SSM
                                          )    Chapter 13
            Debtor                        )

**MEMORANDUM OPINION**

A hearing was held on May 26, 2010, on the objection of Sonia N. Green, the debtor's former wife, to confirmation of the modified chapter 13 plan filed by him on February 11, 2010, and on Ms. Green's motion to dismiss the debtor's case. Both the objection and the dismissal motion are based on the debtor's alleged bad faith. For the reasons stated, confirmation will be denied, but with leave to file a modified plan.

Background

The essential facts are set forth in the prior opinion of this court, which denied confirmation of the debtor's original plan based on the court's determination that the plan had not been proposed in good faith. *In re Green*, 2010 WL 396253 (Bankr. E.D. Va., January 27, 2010). Briefly, the debtor, Edward Trae Green, III, is a self-employed painter who was divorced from Sonia N. Green in 2008. As part of its equitable distribution award, the state court granted Ms. Green an equalizing judgment in the amount of $45,737, to be paid within one year of the decree. When the debtor failed to make the payment, the state court issued a rule to show cause why he should not be held in contempt for failure to pay child support and the equitable

distribution award.  The petition commencing the present case was filed three days prior to the scheduled trial on the rule to show cause.

The debtor's original plan required him to pay the chapter 13 trustee $250.00 per month for 60 months and projected a dividend to unsecured creditors of 21 cents on the dollar.  The court, after considering the factors identified by the Fourth Circuit in *Deans v. O'Donnell*, 692 F.2d 968 (4th Cir. 1982) and *Neufeld v. Freeman*, 794 F.2d 149 (4th Cir. 1986), found that the plan had not been filed in good faith, primarily because of the unexplained loss of equity in the real property (which was awarded to the debtor by the state court and was likely seen by the state court as the source for the payment of the equalizing award).  Part of the loss resulted from a modest decline in the value of the property, but most of it resulted from a nearly $64,000 increase in the balance on the home equity line of credit in the 19 months from entry of the divorce decree to the filing of the chapter 13 case.  That increase was $20,000 more than the amount that would have been required to pay the equalizing award.  As the court noted,

> Had the advances resulted from some financial emergency or had they been used for some purpose that appeared productive at the time, a different issue might be presented.  Here, however, the debtor has provided no explanation whatsoever to account for the advances taken against the line of credit.

*Green*, 2010 WL 396253 at *3.  The court concluded that the complete failure to provide any accounting, when coupled with the relatively low dividend being paid and the fact that the largest debt (Ms. Green's) would be nondischargeable in chapter 7, but dischargeable in chapter 13, tipped the balance against a finding of good faith.  *Id.*  Accordingly, the court denied confirmation, but with leave to file a modified plan.

The modified plan filed by the debtor on February 11, 2010, increases the plan payment from $250 per month to $300 per month for the final 55 months of the plan, increases the

attorney's fees to be paid through the plan from $1,500 to $3,500, and projects a marginal increase in the dividend on unsecured claims to 22 cents on the dollar from the former 21 cents.[1] Not surprisingly, Ms. Green objects to confirmation of the modified plan on the ground that it is not materially different from the plan that had been denied confirmation.[2]

At the confirmation hearing, the debtor offered into evidence a copy of the account transaction history for the home equity line of credit together with a detailed accounting of the $52,656 in advances taken from May 25, 2007, through July 3, 2009. The vast bulk—$35,556—was paid to the debtor's divorce attorney,[3] $1,100 was paid to Ms. Green as child support, $2,000 was paid to the debtor's credit card issuer, and the remaining $14,000 was transferred to the debtor's checking account and, according to the debtor, was used to pay child support,[4] his mortgage payments, and living expenses when business was slow. The debtor's federal income

---

[1] The dividend would have been 26 cents on the dollar except for the increase in attorney's fees.

[2] She also objected to confirmation on the ground that the debtor did not have the financial ability to carry out the plan because his actual income is less than the income reported on his schedules. It is certainly true that a plan should not be confirmed unless the debtor shows that he or she "will be able to make all payments under the plan and to comply with the plan." § 1325(a)(6), Bankruptcy Code. But where a debtor has timely commenced making payments to the trustee and is current on the date of the confirmation hearing, the court is inclined to resolve any doubts as to ability to pay (at least when the plan does not require substantial "step-up" payments) in favor of the debtor. Since the debtor will not receive a discharge until plan payments are completed, confirmation can have little or no prejudicial effect. A different issue would be presented if the anticipated plan funding were clearly visionary, but that is not this case. If a confirmed plan were not to succeed, and the debtor either converted his case to chapter 7 or received a so-called "hardship" discharge under § 1328(b), Bankruptcy Code, Ms. Green's equitable distribution claim would survive the debtor's discharge. § 523(a)(15), Bankruptcy Code.

[3] The debtor testified that the total amount he ended up paying to his divorce attorney was $55,000.

[4] The debtor has a child support obligation to another woman in addition to Ms. Green.

tax return for 2009 reflects that his painting business collected $119,684 in gross revenues that year, and that he netted $33,160 after payments for contract labor and business expenses.[5]

## Discussion

As Ms. Green correctly observes, the present plan does not materially differ from the prior plan that was denied confirmation. Although there is a modest (18%) increase in the amount being paid into the plan, it is largely offset by the increased attorney's fees provided for by the plan,[6] with the result that Ms. Green would not be paid an amount that exceeds, in any meaningful sense, the amount she would have received under the prior plan. The only thing that has really changed is that the debtor (with the benefit of the court's opinion denying confirmation of the prior plan) has now presented evidence to explain how the home equity line of credit increased from the time the equalizing award was made to the date the bankruptcy was filed.

---

[5] The actual net income reported on the debtor's tax return was $30,274, but this included home office deductions. Since the debtor's mortgage and utility payments are already deducted in full on his bankruptcy schedules, the court treats the net before the home office deduction as more accurately reflective of the debtor's actual income for the purpose of plan confirmation. On his schedule of current income (Schedule I) filed in this case, the debtor reported monthly income of $4,500 per month, which on an annualized basis would equate to $54,000. In state court litigation in May 2010 to set child support, the debtor testified that his income was in the range of $30,000 to $40,000, and the judge adopted the latter figure for the purpose of setting child support.

[6] Although debtor's counsel has not yet submitted a formal fee application—which is required in this district when the total fee in the case exceeds $3,000—the court assumes the additional fees are primarily attributable to litigating the objection to confirmation of the prior plan, as well as the debtor's objection to allowance of Ms. Green's late filed claim (which the court ruled would be treated as an amendment to the timely "informal" proof of claim set forth in her objection to confirmation of the original plan).

Having considered the factors set forth in the court's original opinion, the court cannot find that a plan that would pay Ms. Green anything less than 26 cents on the dollar of her allowed claim would satisfy the good faith test even in light of the evidence that has (belatedly) been presented concerning the advances taken on the home equity line of credit. While the court strongly believes that debtors' attorneys should be fairly compensated, the court cannot find that it is fair to Ms. Green that she be forced to pay (in the form of a reduced dividend that leaves her no better off than under the prior plan) the additional attorney's fees occasioned by the debtor's earlier unsuccessful attempt at plan confirmation. Essentially, the debtor has two choices: he can increase plan funding to an amount that will pay unsecured claims at least 26 cents on the dollar while allowing for payment of approved attorney's fees through the plan, or he and his attorney can agree that any approved fees beyond the $3,000 "no-look" fee that is typical in chapter 13 cases in this district be paid directly by the debtor after completion of the plan payments.

A separate order will be entered denying confirmation, with leave to file a modified plan. The request that the case be dismissed as a bad faith filing will be denied. However, if the debtor files a modified plan that is not confirmed, the court will likely deny leave to file any further modified plans and (unless the debtor converts to chapter 7) will dismiss the case for delay prejudicial to creditors.

Date: _____        _____
                                    Stephen S. Mitchell
Alexandria, Virginia                United States Bankruptcy Judge

Copies to:

Edward Trae Green, III
10241 Roberts Common Ln.
Burke, VA 22015
Debtor

Scott H. Donovan, Esquire
9402 Grant Avenue
Manassas, VA 20110
Counsel for the debtor

Kenneth L. Crosson, Esquire
11350 Random Hills Road, Suite 700
Fairfax, VA 22030
Counsel for Sonia N. Green

Thomas P. Gorman, Esquire
300 N. Washington St. Ste. 400
Alexandria, VA 22314
Chapter 13 trustee